Hitchcock, J.
Before proceeding to consider the errors assigned in this case, it is necessary that we understand fully the •issues made up by the parties, and which were submitted to the jury for trial. The record shows that the defendants below, after craving oyer of the declaration, filed no less than eleven special pleas, no doubt supposing they were all proper and necessary for the protection of their rights in the case. The first plea is, that at the time of effecting the insurance, “ the plaintiff did represent the said steamboat Ellen Dale to these defendants otherwise than the same really was, and so as to cause and induce the said ^defendants to effect said insurance at a lower premium than they would otherwise have done.”
“ 2. That the plaintiff did cause the said steamboat Ellen Dale to be represented to the defendants otherwise than it really was, in matters material to the risk assured by the defendants,” and thereby induced the defendants to effect the insurance, which otherwise they would not have done.
“3. That plaintiff caused said boat to be represented to the *276 defendants otherwise than the same really was; that is to say, that said Ellen Dale was of the value of $3,000 and upward, when in truth the value of said boat was less than $800, and that the same was unknown to the defendants; that the same was material to the risk,” etc.
4. That the plaintiff concealed facts material to the risk assured, and that without such concealment the defendants would not have assured, etc.
5. That the plaintiff concealed facts material to the risk, to wit: That the hull of said steamboat had been the keel of a keel-boatr that the bottom thereof was constructed of thin, red-oak plank, without sheathing; that she was more light and fragile than steamboats usually are; was nearly worn out; that the planks of the bottom were worm-eaten, “ and also many other facts material to the risk.”
6. That the plaintiff, intending to defraud the defendants, did cause said steamboat to be overvalued in and by said policy, by representing to the defendants that the same was worth $3,000, when the true value was less than $800, and by said false and fraudulent representations induced the defendants, to whom the true value of the boat was unknown, to fix the value thereof at $3,000, and insure thereon the sum of $2,000.
7. That the plaintiff concealed from defendants *the value of said boat, in this—that knowing that the defendants had no knowledge of the value of the same, except as they arrived at such knowledge from the survey and report of one Joseph Pierce, and well knowing that the valuation of the same, made by the said Joseph Pierce, in and by said report, to wit, $3,000, was far greater than the value thereof, viz., less than $800; yet the plaintiff concealed the same from the defendants; that the said concealment was material to the risk, and that the insurance was obtained by the concealment.
8. That the loss by fire was caused by the fraudulent and willful act of the plaintiff; that the plaintiff caused said boat to be burned and destroyed, with intent to cheat and defraud the defendants.
9. That the plaintiff caused said boat to be represented to the defendants to be worth $3,000, although of less real value than $800, as was well known to plaintiff, although unknown to the defendants, and did thereby induce the defendants to value said *277 boat at $3,000, and to insure thereon $2,000, with the intention of causing the boat to be destroyed by fire, for the purpose of defrauding the defendants.
10. That from the time of effecting the insurance to the time of the destruction of the boat, the same was unseaworthy.
11. That the said boat was unseaworthy in this, that she was unfit and unsafe to navigate the southern rivers, by reason of the slender and feeble timbers and planks of which she was constructed ; by reason of worm holes in her bottom ; by reason of the fragile character of her original construction; by reason of the rapid deterioration she had undergone; by reason of injuries she had received ; by reason of the bad character and incompetency of her captain; and by reason of many other defects.
The foregoing is the substance of the several pleas. They may all have been necessary and proper; but it really seems *to us, to say the least, that there is some little repetition in them ; and we should doubt whether some of them would well boar the test of a demurrer. The plaintiff below, however, replied to each plea specifically, traversing all the facts set forth.
The first error assigned is, that the court refused to permit the defendants below to open and close the testimony and the argument. The rule upon this subject, as recognized by this court, is this, that the party having the affirmative of the issue, shall •open and close. Where, by the pleadings, it is apparent that no evidence is required from the plaintiff, the defendant ought to open ; but if any, no matter how slight, proof is required of the ■plaintiff, he must be allowed to go forward. In this case, however, there was not á single issue to be determined; but eleven separate and distinct issues, in some of which, at least, the plaintiff had the affirmative. Take, for instance, the tenth plea, which is, that the boat was unseaworthy. This plea is traversed by the plaintiff below, by the affirmation that she was seaworthy. And “the same is the fact in some of the other pleas. Looking at the whole case, the court entertained the opinion that the plaintiff should open the case. We are not prepared to say that there was anything wrong in this. And even had there been a mistake, I •should be unwilling to hold that this was an error in law, for which a judgment should be reversed. There is no such uniform practice in this state as would induce me to say it had become a principle of law.
*278 The second error assigned is, that the court erred in charging the jury, as set forth in the bill of exceptions.
The charge given, as appears from the bill of exceptions, which is complained of, is this: “That the plea of the defendants, that, the plaintiff fraudulently caused the said steamboat ‘ Ellen Dale ’ to be burnt, charged the plaintiff with a crime, and that they ought not to find a verdict for the defendant on that plea, unless the evidence that the plaintiff did burn his boat was so strong as to satisfy them *of the fact beyond a reasonable doubt.” I arprehend that it will not be insisted that the court erred in saying that the plea, in charging the-plaintiff below with burning his own boat, charged him with a crime. And it is a question worthy of grave consideration, whether a man should be found guilty of a crime, let the charge be made against him either in a civil or criminal proceeding, if there be doubt whether or not he is guilty. It is the duty of the jury in all cases to find the truth of the fact presented to them. Bat if, after hearing all the evidence upon the point, it still remains doubtful where the truth lies, what is to be done? We have always held, that under such circumstances, it is the duty of a jury to resolve the doubt in favor of him against whom the charge is made. For instance, after hearing all the evidence, if it remains doubtful whether a plaintiff has sustained his cause of action, that doubt must acquit the defendant; and so if a defendant relics upon a special plea, if it is doubtful whether the plea is sustained, a jury can not, with propriety, return a verdict sustaining the plea. It is said, however, that a jury must decide according to the weight of the evidence. This is true. All the evidence must be considered; it must be deliberated upon ; it must be weighed ; but after all, a decision must be made according to the conviction produced upon the minds of those who have to respond to that evidence. A fact must be proved, either positively or circumstantially, before a jury can be justified in saying that it exists.
It is said, however, that the rule is different in civil and criminal cases; and so undoubtedly it is, to a certain extent. It would bo the duty of a jury to examine more carefully the testimony produced for the purpose of convicting a man of a crime, than the same testimony when introduced to charge him with the payment of a money demand. The testimony should be more clear, more conclusive, more convincing; less liable to doubt and uncertainty. *279 Mr. Greenleaf, in his treatise ,upon evidence, in speaking of a case like the one know before the court, says: “Where the ^defense, is, that the property was willfully burnt, by the plaintiff himself, the crime must be as fully and satisfactorily proven to the jury, as would warrant them in finding him guilty on an indictment for the same offense.” 2 Greenl. Ev., sec. 408. It is true but one authority is cited by the writer to sustain this dictum, but no decided case has been referred to in the argument in opposition to it. And as applicable to the case now before us, there would seem to be some little reason at least in adopting this rule. The plaintiff below was charged in the pleading with all manner of fraud ; with having burnt his own boat; with having effected the insurance, with the fraudulent intent, when the insurance was effected, of so burning her; and tha the, as captain (for the proofs show that he was captain), was incapable of managing her. And now the complaint is, that a rule somewhat'like the one laid down in Greenleaf was prescribed to the jury, to guide them in their deliberations. That the jury were not left to decide the question of guilt upon doubtful evidence. The rule laid down by that writer may not be technically correct, but it certainly is not far out of the way. My understanding upon this subject is,, that in all cases, whether civil or criminal, the jury must be satisfied, must be convinced that the fact is as they find it to be. And how can they be satisfied and convinced, so long as doubts exist in their minds as to the truth of such fact. Under such circumstances, I should not dare to direct a jury that they were bound to find the truth of such fact; but should unquestionably say to-them, that the doubt must operate in favor of him who held the negative of the issue to be passed upon.
What was done more than this, in the case before the court ? The jury were told that before they could find for the defendant below, upon the plea which charged the plaintiff with burning his own boat, they must be satisfied of its truth beyond a reasonable doubt. Will it be contended, that if, after hearing all the evidence upon this point, it still remained doubtful in their minds, whether the defendant in terror actually burned his boat, they were bound, notwithstanding such doubt, to find tie did commit the act? Such a principle would compel a jury, on their oaths, to find the existence of a fact of which they doubted. It would hold them, in their deliberations, to seek, not after the truth, but after the *280 weight of evidence. True, a jury are sworn to return a true verdict, according to the evidence given them in court. But according to my understanding, by taking upon themselves this obligation, they are bound to return a verdict according to the convictions produced in their minds by this evidence.
The objection raised by the plaintiff in error, to this part of the charge, is based rather upon the peculiar phraseology used, than upon any substantial objection to the substance. Now the court instructed the jury, in reference to this particular plea of the defendant below, that if, after hearing and considering all the evidence relative to that plea, it remained doubtful in their minds, whether the plaintiff in error burnt the boat, it would be their duty to acquit him of the charge, there would have been no question but that the instruction would have been correct. Now the instructions actually given do not substantially vary from this. Upon careful examination, I am not prepared to say that any principle of law relative to the rules of evidence, or the duty of juries, was violated by the instructions complained of as being erroneous.
The next error assigned is, that the court refused to charge as requested by the defendant’s counsel, as set forth in the bill of exceptions.
The particular errors pointed out in argument, although not in the assignment, are first: “The defendant’s counsel asked the court to charge the jury, that if they should find that the steamboat was seaworthy, but that her hull had been the hull of a keel-boat built at Pittsburg, of which fact the defendants were ignoant at the time of issuing the policy, and a knowledge of which would have caused them to refuse the risk, and said fact was not communicated to *thom, it was a concealment of a material fact, and avoided the policy.” This was refused.
Now, whether such instructions should have been given, at the request of the plaintiff in error, must depend upon circumstances. There can be no doubt that the utmost good faith is required of him who would effect an insurance upon his property. It is his duty truly to represent the situation and state of that property, so far as is necessary for the information of the insurer. Any concealment of a fact material to the risk, and which, if known, would prevent the undertaking of the insurer, would defeat the policy. More especially, if such concealment was designed to *281 deceive him who takes the risk. "Was it material to the risk in this case, that it should have been made known to the insurers? The hypothetical proposition assumed by counsel is, that had the plaintiffs in error known that the hull of the steamboat had been the hull of a keel-boat, they would not have taken the risk. But in putting this hypothetical case, there is no pretense that the defendant in error had any knowledge of this. And if he had no knowledge that such was the determination of plaintiffe in error, he can not be charged with fraudulent concealment. If, however, there was more danger that a boat built upon the hull of a keel-boat would be burnt than if built otherwise, then it was material that this fact should be made known. If not, I do not so readily perceive how it could be material. That any increased danger existed on this account is not pretended. If it was a singular occurrence'that a boat had been so built, it might, perhaps, then have been necessary that the fact that this boat was so constructed, should have been communicated to the insurers, although I do not see how it should be so considered. But the testimony in the case shows, that boats of the smaller classes were not unfrequently constructed in this manner. This was a boat of the smaller class; and the defendant in error might well suppose that those plaintiffs in error, who were in the habit of insuring, must be acquainted with a fact which seems to have been known to ^others in the same kind of business. Inasmuch as the evidence does not show that the risk was in the least increased, in consequence of the manner in which the boat was constructed, we are of opinion that there was no error in refusing this particular instruction.
It is claimed, in the next place, that the court erred in refusing to charge, as requested by the counsel for plaintiffs in error, “ that if the plaintiff represented, to the defendants, the steamboat, at the time of effecting the insurance, ‘ to be a good steamboat, worth more than $3,000,’ and the defendants were thereby induced to take the risk, and issue said policy, and the said steamboat was not a good steamboat, nor worth ‘ $3,000,’ the policy did not attach, and the plaintiff could not recover.”
The bill of exceptions shows that the court did not give this instruction, remarking that they would not give or refuse the same; that the language “ good steamboat,” as applied to the law of insurance, was indefinite ; and that they did not know what it meant in reference to such law, and if the counsel would inform *282 tbe court what it meant, that the court would charge upon it; that a good steamboat would depend upon all the circumstances— such as her class, and her trade.
It is insisted, however, that the court was bound to give this instruction, whether it knew what was meant by counsel as a good steamboat, or not. It would, at least, have been kind in the counsel, to have explained their meaning, in using this language in the connection in which it was used. Neglecting and refusing' to do it, it is hardly proper to assign this neglect, on the part of the court, to charge, as requested, for error. As a matter of fact, it is true that a boat may be a good steamboat for some particular trade, and not for another. She may be a good steamboat for a particular class, and yet, not of such a character as, according to' some acceptations of the term, to be denominated a good steamboat. A boat of twenty-five or fifty tons burden would not, in the estimation of one who considered ^tonnage to constitute, in a great measure, the quality of a boat, be considered a good steamboat. But for present purposes, let it be admitted that the-court were bound to charge, without being informed of the meaning of counsel, was there error?
The defendants below have placed their defense upon eleven-special pleas, in which they set up the reasons why they should not be bound by the policy. I have carefully examined these pleas, and in no one of them is there an allegation that the plaintiff below represented the Ellen Bale to be “ a good steamboat,, and worth $3,000.” There is an allegation, and it is repeated in many of these pleas, that he represented the boat to be worth $3,000, and the jury have found the fact that she was worth that much money. "Whether she was represented to be “ a good steamboat,” was not a matter put in issue. And the defendants below, not having chosen to put this matter in issue, but having elected to rely upon other matters of defense, it seems to me they had no right to call upon the court to give any instructions upon this point, and the court might well refuse any.
As to the value of the boat. Under which of the pleas would this charge be claimed? If under any, it must have been the sixth, seventh, and ninth, which are all based upon the hypothesis, that the plaintiff below represented to the defendants, and caused it to be represented to them, that the boat was worth $3,000 and more, when he knew that she was far less valuable. In other *283 words, that the plaintiff fraudulently, and with intent to cheat and deceive the defendants, made this representation. Now what would be the evidence necessary to sustain the issues joined upon the pleas, on the part of the plaintiff in error? Unquestionably, it must he proven that the representation was made that the boat was worth §3,000, and that she was not actually worth that much money. And this was assumed to have been proved, as the foundation of the charge requested. But this would not have been sufficient. There must have been further proof *that the defendant, at the time he made the representation, actually knew that the boat was not of the value represented. Without this proof, there was .no evidence of fraud. And it was not pi'etended, in the hypothetical proposition submitted, that there was any such proof. It would have been improper then, under the state of pleadings, to have given the instructions requested.
The next error assigned is, that the court refused to grant a new trial.
And the reasons assigned for a new trial are, that the court erred in the several particulars before enumerated, and because the verdict was against the evidence.
It is unnecessary to notice the first reason assigned, as we entertain the opinion that the court did not err in the particulars specified during the progress of the trial. In the opinion of the judges who heard the trial, the verdict was not against the evidence; and there is nothing in the bill of exceptions, although all the evidence is not therein specified, which would lead this court, to a different conclusion.
The last error assigned is the general error, and under this it is claimed that the judgment must be reversed, because the declaration is insufficient in not averring “that the boat was completely provided with a master and crew,” in accordance with a covenant contained in the policy of insurance. It would seem be 'rather late to take advantage of a defect of this kind. The policy was made part of the declaration by oyer, and if there had been any variance between it and the declaration, it should have been taken advantage of by demurrer. The declaration shows a title or right in the defendant in error; and, if defectively set out, it is cured by verdict. Beside all this, perhaps no one question was litigated more severely before the jury than the question *284 whether this boat was completely provided with a competent master, officers, and crew.
We are not satisfied that any error was committed by the Supreme Court of the county, and the judgment is therefore affirmed.